UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MAYCOL GEOVANNIA SANCHEZ,

                Petitioner,

    v.

WARDEN, et al.,

                Respondents.

CIVIL ACTION NO. 3:26-CV-01095

(MEHALCHICK, J.)

**MEMORANDUM**

*Pro se* Petitioner, Maycol Geovanni Sanchez ("Sanchez"), a Nicaraguan citizen seeking asylum in the United States, brings this petition for writ of habeas corpus. (Doc. 1). On April 27, 2026, Sanchez filed the instant petition, requesting that the Court order his release from custody at the Federal Correctional Institute Lewisburg ("FCI Lewisburg")[1] or that Respondents Warden, ICE Philadelphia Field Office Director, Director of ICE, and Secretary of DHS[2] release him from custody. (Doc. 1). On May 5, 2026, the government filed

---

[1] The Court notes that Sanchez's *pro se* petition states that he requests release from the Cambria County Prison, but his mailing address shows that he filed his petition from FCI Lewisburg. (Doc. 1). This confusion stems from the following course of events: 1) Sanchez filed a petition in the Western District of Pennsylvania while confined in the Cambria County Prison, 2) that petition was denied without prejudice, and 3) Sanchez filed the instant petition while confined at FCI Lewisburg. (Doc. 1, at 7; Doc. 7, at 1). As the Middle District is the district of confinement, the Court has jurisdiction. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (stating "the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement").

[2] The proper respondent in this case is Jessica Sage ("Sage"), Warden of FCI Lewisburg. *See Phan v. Warden of the Federal Correctional Institution Lewisburg, et al.*, No. 3:26-CV-00770, 2026 WL 1080390, at *1 n.1 (M.D. Pa. Apr. 21, 2026) (recognizing that Sage is the Warden of FCI Lewisburg and the proper respondent for petitions filed by FCI Lewisburg inmates). "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld*, 542 U.S. at 434 (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the

a timely response to Sanchez's petition. (Doc. 7). On May 11, 2026, the Court ordered the government to file an additional response clarifying whether Sanchez is subject to a final order of removal. (Doc. 8). On May 18, 2026, the government filed a timely supplement clarifying that Sanchez is not subject to a final order of removal and that Sanchez is detained pursuant to U.S.C. § 1225(b)(1). (Doc. 9). For the following reasons, Sanchez's petition (Doc. 1) is **GRANTED**, and Sage is **ORDERED** to release Sanchez from custody.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

The following background is derived from Sanchez's petition, the government's responses, and the exhibits thereto. (Doc. 1; Doc. 7; Doc. 9). Sanchez is a citizen of Nicaragua who first entered the United States in May 2005. (Doc. 7, at 2). ICE previously removed Sanchez from the United States on September 24, 2008, and ordered him not to return for ten years. (Doc. 7, at 3; Doc. 7-7, at 2; Doc. 9, at 5). On June 5, 2019, over ten years after his removal, Sanchez applied for admission at the Paso Del Norte International Bridge in El Paso, Texas and claimed fear of returning to Nicaragua. (Doc. 7, at 3). On July 23, 2019, the government released Sanchez on parole with his parole expiring on July 24, 2020. (Doc. 7-11).

---

immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Sanchez is detained at FCI Lewisburg, Sage is the proper respondent. (Doc. 1, at 7; Doc. 7, at 1); *see Rumsfeld*, 542 U.S. at 434; *see also Phan*, 2026 WL 1080390, at *1 n.1. As such, all respondents except for Sage are **DISMISSED**. However, the government will be bound by the Court's judgment because Sage is acting as an agent of the federal government by detaining Sanchez on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

On November 4, 2024, the government encountered Sanchez at the Camden County Jail in New Jersey and detained him. (Doc. 1, at 2; Doc. 7, at 4). Although the government's records indicate that Sanchez was arrested on criminal charges before encountering ICE, Sanchez avers that he was not convicted of any "serious" crimes, and the government offers no evidence or arguments to the contrary. (Doc. 1, at 2; Doc. 7, at 4). On September 23, 2025, an Immigration Judge found Sanchez inadmissible, denied all applications for relief and asylum, and ordered him to be removed from the United States. (Doc. 7, at 4; Doc. 7-12). Sanchez appealed this order of removal and his appeal is pending. (Doc. 7, at 4). The government concedes that Sanchez does not have a final order of removal. (Doc. 9, at 4). ICE has detained Sanchez for eighteen months. (Doc. 1, at 2; Doc. 9, at 24).

On April 27, 2026, Sanchez filed the instant petition. (Doc. 1). On May 5, 2025, the government filed a response. (Doc. 7). On May 18, 2026, upon order of the Court, the government filed a supplement. (Doc. 8; Doc. 9). Sanchez did not file a timely traverse or reply to the government's supplement. Accordingly, this matter is ripe and ready for disposition.

II.   **LEGAL STANDARD**

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in

only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan,* 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections); *see also Alexey Kashranov v. J.L. Jamison, et al.*, No. 2:25-CV-05555, 2025 WL 3188399 at *8 (E.D. Pa. Nov. 14, 2025) (finding that the appropriate remedy when the government detains a petitioner under an inapplicable statute, violating due process, is release from custody).

### III.    THE BASIS OF SANCHEZ'S CLAIMS

Sanchez's *pro se* petition is unclear regarding the legal theories he is challenging his detention on as he only vaguely states that his prolonged detention violates his due process rights. (Doc. 1). However, courts must liberally construe *pro se* filings and a *pro se* habeas petitioner should not be expected to identify a specific legal theory as counsel would be expected to so long as the *pro se* petitioner provides the Court with allegations sufficient to find a violation of their statutory or constitutional rights. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (stating "[a] document filed *pro se* is 'to be liberally construed'"); *see also Gonzalez-*

*Leyva v. Warden, FCI Fort Dix*, No. CV 23-2715 (CPO), 2025 WL 1088120, at *1 (D.N.J. Apr. 11, 2025) (stating "Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. Courts must construe pro se habeas petitions and any supporting submissions liberally and with a measure of tolerance" (citations omitted)). The Court should afford Sanchez further leeway in challenging the basis of his prolonged detention because the government has not given a consistent basis for Sanchez's detention. *Compare* (Doc. 7, at 5-7) *with* (Doc. 9, at 3, 5-21). The government first argued that Sanchez is detained pursuant to 8 U.S.C. § 1231 but later asserted that its § 1231 argument was in error and Sanchez is actually detained pursuant to 8 U.S.C. § 1225(b). (Doc. 7, at 5-7; Doc. 9, at 3, 5-21). Based on the Court's review of Sanchez's petition and the government's latest response, this case resembles cases in which courts in the Third Circuit have evaluated whether 8 U.S.C. § 1226 or 8 U.S.C. § 1225(b) applies to noncitizens residing in the country for an extended period of time and whether detaining such a noncitizen violates procedural due process. *See Cantu-Cortes v. O'Neill*, No. 25-CV-6338, 2025 WL 3171639 at 1-2 (E.D. Pa. Nov. 13, 2025); *Kashranov*, 2025 WL 3188399 at 5; *Del Cid v. Bondi*, No. 3:25-CV-00304, 2025 WL 2985150 at 14-17 (W.D. Pa. Oct. 23, 2025); *Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572 at 4-7 (D.N.J. Oct. 22, 2025)). The Court will liberally construe Sanchez's petition to be a challenge to ICE's statutory basis to detain him and a challenge to Sage allegedly violating his due process rights similar numerous other challenges which have recently been before the Middle District and the Court's sister courts in the Third Circuit. (Doc. 1); *see Cantu-Cortes*, 2025 WL 3171639 at 1-2; *Kashranov*, 2025 WL 3188399 at 5; *Del Cid v. Bondi*, 2025 WL 2985150 at 14-17; *Bethancourt Soto v. Soto*, 2025 WL 2976572 at 4-7. Like in those recent cases, the government argues that it properly detained Sanchez under 8 U.S.C. § 1225(b), properly

denied him a bond hearing, and did not violate his due process rights. (Doc. 9, at 5-24). Accordingly, the Court will assess whether Sanchez should be detained under 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226 and whether Sage violated Sanchez's procedural due process rights.

## IV.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226, and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal,

the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Baptiste*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Kashranov*, 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil*, 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction over Sanchez's habeas petition because the legal questions of whether § 1225(b) or § 1226 applies to Sanchez and whether Sanchez is entitled to a bond hearing are wholly collateral to her removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79.

## V.   DISCUSSION

The government avers that it did not violate the federal law by detaining Sanchez for over a year without a bond hearing because his detention falls squarely within the mandatory detention required by 8 U.S.C. § 1225(b)(1). (Doc. 9, at 5-8). The government argues that in the alternative, it may detain Sanchez without the opportunity for bond or release pursuant to 8 U.S.C. § 1225(b)(2). (Doc. 9, at 8-21). The government further contends that Sage did not violate Sanchez's procedural due process rights because his detention is mandated by Congress. (Doc. 9, at 21-24).

A. SAGE CANNOT DETAIN SANCHEZ UNDER 8 U.S.C. 1225(B).

Sage improperly detained Sanchez under 8 U.S.C. § 1225(b) when Sage should have detained Sanchez under 8 U.S.C. § 1226(a).[3] The government argues that "Sanchez's mandatory detention is lawful under subsection 1225(b)(1)" because "[t]he [g]overnment apprehended him hours after he entered the United States and within 1 air mile of the United States and Mexico international boundary" and although the government paroled him into the country, they revoked his parole and resubjected him to mandatory detention. (Doc. 9, at 2-6). The government further argues that even if § 1225(b)(1) does not apply to Sanchez, he is subject to mandatory detention under § 1225(b)(2). (Doc. 9, at 8-21).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. Kashranov, 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to obtain release during deportation proceedings. Matter of Yajure Baptiste, 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and

---

[3] The Court notes that the government discusses detention pursuant to § 1226(c) as the alternative to detention pursuant to § 1225(b), rather than detention pursuant to § 1226(a). (Doc. 9, at 19). However, § 1226(c) only applies where a noncitizen is convicted of certain crimes. See Michelin v. Warden Moshannon Valley Corr. Ctr., 169 F.4th 418, 433 (3d Cir. 2026) (stating "§ 1226(c) requires the Government to detain immigrants with certain criminal convictions pending removal without bond hearings" (emphasis added)); see also German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 207 (3d Cir. 2020) (stating "8 U.S.C. § 1226(c) . . . requires the [g]overnment to detain aliens convicted of certain crimes" (emphasis added)). Sanchez asserts that he has no "serious criminal history" and the government does not point to any evidence that Sanchez has a conviction warranting mandatory detention despite having two opportunities to respond to Sanchez's claim. (Doc. 1, at 2; Doc. 7; Doc. 9).

Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in part, to end the preferential treatment of noncitizens who evaded inspection when entering the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Baptiste*, 29 I. & N. Dec. at 223. With the IIRIRA, Congress eliminated separate exclusion and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

Pursuant to section 1225(b)(1) of the IIRIRA, when a noncitizen enters the United States at a designated port of entry, they are considered an "arriving alien" and are generally subject to expedited removal, unless they indicate an intention to apply for asylum. If the asylum officer finds a noncitizen's asserted fear of persecution to be credible, the noncitizen's asylum claim will be fully considered in a standard removal hearing. 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(ii). Noncitizens are subject to detention while an immigration judge considers their asylum application; however, the Department of Homeland Security may grant such noncitizens parole into the United States for humanitarian purposes. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 U.S.C. § 1182(d)(5). 8 C.F.R. § 212.5(e), outlines when and how the government may terminate parole. Section 212.5(e) provides:

Termination of parole—

(1) Automatic. Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required

> (2)(i) On notice. In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. . . . If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 C.F.R. § 212.5 (e).

When humanitarian parole under 8 U.S.C. § 1182(d)(5) terminates, the noncitizen "shall be restored to the status the he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i). However, courts in this circuit have found the government must follow § 212.5 (e)'s regulatory requirements when terminating a noncitizen's parole and may not simply declare that parole was terminated to justify a detention after the fact. *See F.M.S. v. Lowe*, No. 1:25-CV-02061, 2026 WL 1113769, at *4 (M.D. Pa. Apr. 24, 2026) (finding that revocation of parole is invalid where the government fails to present evidence that it complied with the requirements of 8 C.F.R. § 212.5(e)); *see Nosirov v. Rife*, No. 2:26-CV-1534, 2026 WL 916602, at *3 (E.D. Pa. Apr. 1, 2026) (stating "parole is a legal status with legal consequences, and the [g]overnment may not erase or ignore that status when it becomes inconvenient to its detention theory"); *see also Baptiste v. Hoover*, No. 3:26-CV-00890, 2026 WL 1300541, at *5 (M.D. Pa. May 12, 2026) (stating "as the government did not terminate [the petitioner's] humanitarian parole in accordance with the written notice requirements of 8 C.F.R. § 212.5(e), [the petitioner] cannot be restored to custody under § 1225(b)(1)").

Section 1225(b)(2)(A) of the INA is a catchall provision that applies to applicants for admission not otherwise covered by § 1225(b)(1). *Jennings,* 583 U.S. at 287. Section 1225(b)(2)(A) of the INA provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings,* 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov,* 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde,* 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov,* 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov,* 2025 WL 3188399, at *6; *Soto v. Soto,* 807 F. Supp. 3d 397, 408 (D.N.J. 2025) (collecting cases).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings,* 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov,* 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval,* No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of

11

entry. *Kashranov*, 2025 WL 3188399, at \*6; *Del Cid v. Bondi*, No 3:25-cv-00304, 2025 WL 2985150, at \*16 n. 7 (W.D. Pa. Oct. 23, 2025); *J.A.M.*, 2025 WL 3050094, at \*3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at \*6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at \*2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at \*13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 807 F. Supp. 3d at 407. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning. *Kashranov*, 2025 WL 3188399, at \*6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at \*1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at \*1.

12

On July 8, 2025, ICE and the Department of Justice announced a new practice, in which all applicants for admission, regardless of when the noncitizens were apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited May 27, 2026). On September 5, 2025, the BIA adopted the DOJ's new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Correa*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes*, 2025 WL 3171639, at *2 (finding that § 1226(a), not § 1225(b)(2)(A), is applicable to a petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov*, 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are 'seeking admission,'" and petitioner who lived in the United States for almost two years was not seeking admission but "already here"); *Del Cid v. Bondi*, 2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto*, 807 F. Supp. 3d at 408 (collecting cases). The Second, Seventh, and Eleventh Circuit Courts of Appeals have similarly found that § 1226 and not § 1225(b)(2)(A) applies to noncitizens detained after

13

residing in the country for an extended period of time.[4] *See Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044 (2d Cir. Apr. 28, 2026); *see also Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2026 WL 1223250, at *21 (7th Cir. May 5, 2026); *see also Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *21 (11th Cir. May 6, 2026).

Section 1226(a), not § 1225(b)(1) or § 1225(b)(2), applies to Sanchez's detention. The government has been unable to provide a consistent explanation for Sanchez's detention. The government first argued that Sanchez is detained pursuant to 8 U.S.C. § 1231(a) because he is subject to a final order of removal. (Doc. 7, at 5-8). The Court noted, however, that the government's initial brief contradicted itself regarding whether Sanchez is subject to a final order of removal and ordered the government to explain the discrepancy. (Doc. 7, at 4; Doc. 8). The government filed a supplement conceding that Sanchez is not subject to a final order of removal, and asserting that Sanchez is actually detained pursuant to § 1225(b)(1). (Doc. 9, at 3). The government avers that Sanchez was paroled in the United States in 2019, but that the parole automatically terminated on July 24, 2020. (Doc. 9, at 4). Based on the Court's review of the record, however, Sanchez cannot be restored to custody under § 1225(b)(1) because the government did not terminate Sanchez's parole in accordance with the requirements of 8 C.F.R. § 212.5(e). *See F.M.S.*, 2026 WL 1113769, at *4; *see also Baptiste*, 2026 WL 1300541, at *5.

---

[4] The Court acknowledges that the Fifth Circuit and Eighth Circuit recently issued decisions in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026) and *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) respectively, both holding that under the INA, an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* and *Avila* are not binding on the Court.

The government does not discuss 8 C.F.R. § 212.5(e), the regulation governing when and how the government may revoke parole and return noncitizens to custody under 1225(b)(1). However, the government appears to be arguing that it could revoke Sanchez's detention without notice because his initial parole expired on July 24, 2020. (Doc. 7-11, at 1; Doc. 9, at 2, 4). Even where a noncitizen's parole expires, § 212.5(e)(1) provides that "the alien shall be processed in accordance with [§ 212.5 ](e)(2) of this section except that no written notice shall be required." 8 C.F.R. § 212.5(e)(1). Section 212.5(e)(2)(i) provides that "[i]f the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody." 8 C.F.R. § 212.5 (e)(2)(i). According to the government, Sanchez has been detained for eighteen months. (Doc. 9, at 23). While the Third Circuit has "declined to adopt a presumption of reasonableness or unreasonableness of any duration," it has noted that "detention 'becomes more and more suspect' after five months." *German Santos*, 965 F.3d at 211 (citing *Demore v. Kim*, 538 U.S. 510, 515 (2003); *Diop v. ICE/Homeland Sec.,* 656 F.3d 221, 234 (3d Cir. 2011)). Despite the Court affording the government two opportunities to respond to Sanchez's petition, the government does not provide any arguments or evidence that it complied with 8 C.F.R. § 212.5(e) when revoking Sanchez's parole and returning him to custody under to § 1225(b)(1) or any arguments as to why § 212.5 (e)(2)(i) would not require Sanchez's parole to be reinstated. The government may not revoke parole on a whim in violation of its own regulations to provide a justification for mandatory detention after the fact. *See F.M.S.*, 2026 WL 1113769, at \*4; *see also Nosirov*, 2026 WL 916602, at \*3; *see also Baptiste*, 2026 WL 1300541, at \*5. It appears that the government has done exactly that given

15

that it changed its theory of detention after the Court noted inconsistencies in its initial basis for detention. (Doc. 7, at 5-8; Doc. 8; Doc. 9, at 2-3). Accordingly, the Court finds that Sanchez cannot be detained pursuant to § 1225(b)(1) because the government did not comply with the requirements of 8 C.F.R. § 212.5(e). *See Baptiste*, 2026 WL 1300541, at *5.

The government avers that even if § 1225(b)(1) does not apply to Sanchez's detention, § 1225(b)(2) mandates his detention. (Doc. 9, at 8). Section 1225(b)(2)(A) also does not apply to Sanchez's detention because Sanchez is not seeking admission into the United States. Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez*, 792 F. Supp. 3d at 214, *see Kashranov,* 2025 WL 3188399, at *6; *see also Soto*, 807 F. Supp. 3d at 408. Sanchez is not actively attempting to come into the United States; Sanchez has lived in the United States since June 2019 while seeking asylum. (Doc. 1, at 2; Doc. 3, at 4). Based on the plain meaning of the phrase "seeking admission," Sanchez sought admission when he entered the United States on 2019. (Doc. 7-11, at 2); *see Kashranov,* 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"). Instead, § 1226(a) applies to applicants for admission, like Sanchez, who are not actively seeking admission but who have been residing in the United States for an extended period. *See Kashranov,* 2025 WL 3188399, at *1; *see also Soto*, 807 F. Supp. 3d at 400, 408 (collecting cases). Accordingly, the government is improperly detaining Sanchez pursuant to § 1225(b), when he may only be detained pursuant to § 1226(a).

   B. SAGE VIOLATED SANCHEZ'S DUE PROCESS RIGHTS BY IMPROPERLY SUBJECTING HIM TO MANDATORY DETENTION.

16

Sage's continued mandatory detention of Sanchez under § 1225(b) violates Sanchez's procedural due process rights. Sanchez avers that his mandatory detention, which he has been subjected to for over a year, violates his procedural due process rights. (Doc. 1, at 2-3). The government responds that Sanchez's mandatory detention does not violate due process because it is authorized by Congress. (Doc. 3, at 43-44).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Sanchez's favor because Sage has deprived him of his physical liberty for eighteen months. (Doc. 9, at 23); *Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government"); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects"); *Soto*, 807 F. Supp. 3d at 409. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Sanchez's favor because he remains

erroneously detained without the possibility of release on bond pursuant to § 1225(b) . *See Soto*, 807 F. Supp. 3d at 409 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Sanchez's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 807 F. Supp. 3d at 409-10. Here, the government presents no evidence that Sanchez poses a flight risk or danger to the community.[5] The record shows that Sanchez voluntarily surrendered himself to border patrol in 2019 and attempted to comply with federal immigration law by applying for asylum. (Doc. 7-11). Further, Sanchez complied with the government's previous order that he not return to the United States for ten years because ICE removed him in 2008 and he did not return until 2019. (Doc. 7, at 3; Doc. 7-7, at 2; Doc. 9, at 5). Finally, as discussed *supra* Section V.A, the government did not follow its own

---

[5] The government states, in a conclusory fashion, that Sanchez "previously did not comply with a release order" but only cites to Sanchez's initial parole determination and a one-page immigration form in which an immigration judge checked a box stating Sanchez was a flight risk. (Doc. 9, at 23 (citing Doc. 7-11; Doc. Doc. 7-16)). However, the government previously explained that the immigration judge conducted the "flight risk" determination in Doc. 7-16 without a bond hearing pursuant to 8 U.S.C. § 1231 which the government now concedes does not apply to Sanchez. (Doc. 7, at 4, 7-8; Doc. 9, at 3 n.2). The exhibits contain no actual evidence suggesting that Sanchez violated an order of release and are only evidence that an immigration judge filled out a form he was not authorized to fill out in Sanchez's case and made a determination based on unknown and undisclosed evidence. (Doc. 7-15).

18

regulations found at 8 C.F.R. § 212.5(e), and requiring the government to follow its own regulations is not a burden. *See Martinez*, 385 F. Supp. 3d at 364 (finding that the government was not burdened by following notice requirements outlined in its own regulations); *see also Marshall v. Lansing*, 839 F.2d 933, 943 (3d Cir. 1988) (stating "principles of due process require an agency to follow its own regulations"). As each *Mathews* factor weighs in Sanchez's favor, Sage's mandatory detention of Sanchez under § 1225(b) violates Sanchez's procedural due process rights.

## VI.    CONCLUSION

For the foregoing reasons, Sanchez's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Sage is **ORDERED** to release Sanchez from custody. Sanchez may move to reopen this matter if the government seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

BY THE COURT:

Dated: May 29, 2026                         */s/ Karoline Mehalchick*
                                            **KAROLINE MEHALCHICK**
                                            **United States District Judge**